UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| OCTAVIOUS WALTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| VS. | )      No. 2:17-cv-2181-JDT-cgc |
| | ) |
| TENNESSEE DEPARTMENT OF | ) |
| CORRECTION, ET AL., | ) |
| | ) |
|     Defendants. | ) |

ORDER TO MODIFY THE DOCKET, DENYING REQUESTS TO ADD CLAIMS,
PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANT

On March 16, 2017, Plaintiff Octavious Walton, who is presently incarcerated at the Morgan County Correctional Complex (MCCX) in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Walton's previous incarceration at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee. (ECF No. 1 at PageID 4.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) Walton also filed motions for leave to file an amended complaint and to compel discovery. (ECF Nos. 3 & 4.) The Court denied both of those motions without prejudice. (ECF Nos. 9 & 10.)

On January 22, 2019, Walton sent two letters to the Court seeking to add additional claims to this lawsuit. (ECF Nos. 13 & 14.) The claims relate to his present confinement at the MCCX and are against Defendants who work there. These additional claims are completely unrelated to Walton's claims concerning his incarceration at WTSP and seek relief against entirely unrelated Defendants. Joinder therefore is inappropriate under Federal Rule of Civil Procedure 20. Moreover, the claims against the MCCX Defendants have no connection to this district. The MCCX is located in Wartburg, Tennessee, in Morgan County. Morgan County is part of the Northern Division of the Eastern District of Tennessee. 28 U.S.C. § 123(a)(1). To the extent Walton's letters seek to amend his complaint and add these claims to the present lawsuit, the request is DENIED. If Walton wishes to seek redress against these Defendants, he must properly file his claims in the correct district.

The Clerk shall record the Defendants as the Tennessee Department of Correction (TDOC); James Daniel, Staff Sergeant; Corrections Officer (C/O) First Name Unknown (FNU) Parker, "Max Staff"; Sharon Rose, Unit Manager; WTSP Warden Jonathan Lebo; TDOC Commissioner Tony Parker; Sergeant FNU Bartlett; FNU Fitz, ATW Warden; and Lieutenant Jeremy Rogers.[1]

---

[1] The case caption includes the "West-High Unit 6 Team" as a defendant, but the list of Defendants in the body of the complaint does not. It is therefore unclear whether Walton intended to sue this Team in addition to the TDOC and the Defendants who are specifically named. If so, it does not appear that the Team is an actual entity which may be sued separately. The Clerk is DIRECTED to remove the "West-High Unit 6 Team" as a Defendant.

Walton's complaint contains several hard-to-follow claims against the Defendants regarding his time in Maximum Security Housing Unit 6 at the WTSP. (ECF No. 1 at PageID 2.) Walton first alleges that on August 30, 2016, Defendant Daniel broke Walton's television and removed all of Walton's personal property from his cell without giving a reason.[2] (*Id.* at PageID 6.) When Walton asked why he was taking Walton's property, Daniel allegedly replied, "Because you keep disrespecting my officers." (*Id.*) The incident allegedly occurred in front of Defendant Rose's office, but she refused to discuss the incident with Walton. (*Id.*) Walton told Daniel he was going to kill himself, but Daniel refused to allow Walton to see mental health services. (*Id.*)

Because he had threatened suicide, Walton eventually was sent to a "dry cell" for a few days before returning to his cell. (ECF No. 1-4 at PageID 38.) Back in his cell, Walton requested the return of his property, and Defendant Rose said it would be returned by September 5, 2016. (*Id.*) Instead, on September 5, Defendants Daniel and Bartlett removed Walton from his cell, handcuffed him, took him to an old supply room, forced him to undress to his boxers, and "started jumping on" Walton. (*Id.*) Walton alleges the Defendants believed Walton was hiding a cell phone, but in fact he had a radio. (*Id.*) Once the Defendants realized the electronic device was a radio, they told Walton to get dressed and returned him to his cell. (*Id.*)

---

[2] Walton also states that Defendant Daniel threatened to break Walton's television on multiple occasions. (ECF No. 1-4 at PageID 39, 44.) It is unclear if the threats were made before the August 30 incident or directed towards a different television. Nonetheless, Walton does not allege that these threats led to any injury, and these kinds of "de minimis" threats alone "do not rise to the level of being constitutional violations." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc).

3

On September 11 or 12, 2016, Walton asked his counselor to order the return of his property. (*Id.*) Walton's property eventually was returned but, Walton alleges, it was covered in urine. (*Id.*) Walton told Defendant Bartlett about the urine, and Bartlett said he would tell Defendant Rose and have the property replaced. (*Id.* at PageID 39-40.) When Walton did not receive a new television, he repeatedly wrote to Rose, who told Walton he had numerous write-ups because Walton "cannot keep your hands off of yourself." (*Id.* at PageID 40.) Rose told Walton he would get a new television when Walton's behavior changed. (*Id.* at PageID 40-41.) Walton laments the grievances he has had to file against Rose and the appeal process he has had to follow to get a new television. (*Id.* at PageID 41-42.)

Walton alleges Defendant Rose approached him at his cell and threatened to "put a broom in your anus if you don't stop exposing yourself to my C/O [guards]." (*Id.* at PageID 43.) Walton attempted to report this statement to the Prison Rape Elimination Act (PREA) hotline but received no response. (*Id.*) He also received no response to letters he sent to Defendants Lebo and Tony Parker about the incident. (*Id.*) Walton alleges that on another occasion, on December 22, 2016, Defendant Rose hit him in the hand with a broom. (*Id.* at PageID 48-49.) Walton appears to allege Rose acted in response to a disciplinary report against him for sexual misconduct, which Walton contested. (*Id.*)

Walton claims that on February 2, 2017, Defendant Fitz ordered various C/O's, including Defendant C/O Parker, to assault Walton. (*Id.* at PageID 44.) Walton alleges Fitz made the order at least once while standing in front of Walton's cell and another time

4

while Walton was handcuffed. (*Id.*) Walton states the order was in retaliation for Walton spitting on Defendant Daniel. (*Id.* at PageID 45.)

Walton alleges that on February 20 and 22, 2017, Defendants C/O Parker and Daniel gave him a food tray without any food. (*Id.* at PageID 46.) Walton also states that from March 3 through 6, 2017, unspecified C/O's forced Walton to sleep without a bed mat or a bed sheet. (*Id.* at PageID 47.)

Walton also alleges generally that inmates in Unit 6 have been denied an effective grievance system. (ECF No. 1-1 at PageID 9.) He blames Defendants Fitz, Lebo, and Tony Parker for the alleged inadequacies and claims Defendant Rose has been negligent in her handling of grievances. (*Id.*)

Walton sues Defendants Daniel, C/O Parker, and Bartlett in their official capacities and sues Defendants Rose, Lebo, Tony Parker, Fitz, and Rogers in their individual capacities. (ECF No. 1 at PageID 4-5.) Walton seeks damages and relocation from the supermax facility to a facility with a special-needs specialist on staff. (*Id.* at PageID 8.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556

5

U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Walton filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Walton sues Defendants Daniel, C/O Parker, and Bartlett only in their official capacities and seeks damages. These official-capacity claims are construed as against the Defendants' employer, TDOC. Claims against the TDOC are, in turn, treated as claims against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity. *See* Tenn. Code

Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Walton's claims against Defendants Daniel, C/O Parker, and Bartlett in their official capacities are therefore DISMISSED under 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

Walton's complaint contains no allegations against Defendant Rogers. Several of his claims also make allegations against unspecified Defendants: that his due process rights have been violated by an unspecified C/O on the "reporting staff" who allegedly did not sign a disciplinary report or allow Walton to sign it, (ECF No. 1-4 at PageID 42); that a disciplinary hearing was delayed and Walton was denied requests to review footage from the prison's video system, (*id.* at PageID 42-43); that unspecified C/O's forced Walton to sleep without a bed mat or a bed sheet, (*id.* at PageID 47); and that unspecified Defendants failed to follow certain prison administrative policies, (*id.* at PageID 52). When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendant Rogers is therefore DISMISSED from this lawsuit. To the extent Walton attempts to state a cause of action related to any of the above incidents, those claims also are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Walton fails to state a claim against Defendant Rose related to grievances that Walton alleges went unanswered and the appeals system he had to follow. There is no inherent constitutional right to an effective prison grievance procedure. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v.*

*Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Walton does not allege the constitutional basis for his claim that Defendant Rose threatened to "put a broom in [his] anus" and, on a separate occasion, hit him in the hand with a broom. It appears, however, that Walton is attempting to assert a claim under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). This proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834. To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Walton's allegations against Defendant Rose fail to state an Eighth Amendment claim. The conduct Walton alleges is inappropriate but would not create conditions posing a substantial risk of serious harm or the deprivation of the minimal civilized measure of life's necessities. Verbal threats alone are generally insufficient to state a claim under the Eighth Amendment but may violate an inmate's constitutional rights when they are of serious physical injury or death. *See McIntyre v. Quezevue*, No. 3:11-CV-00128, 2011 WL 2433714, at *2 (M.D. Tenn. June 13, 2011) (citing cases). Rose's idle threat in response to Walton's past actions of exposing himself does not rise to this requisite level. Nor does Walton allege that being hit with the broom caused him any physical injury. To the extent Walton seeks compensation for emotional distress from being hit in the hand, his claim is

10

barred under 42 U.S.C. § 1997e(e), which requires a showing of physical injury to recover on a claim of mental or emotional injury.

To the extent Walton alleges that Defendant Rose's actions were in retaliation for him contesting a sexual misconduct disciplinary report, he fails to state a claim. The Court reviews claims of retaliation under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even if Defendant Rose's threat regarding the broom could qualify as an adverse action, Walton alleges that Rose made the threat in response to Walton's exposing himself to guards. Exposing oneself is not protected conduct, and a prison official responding to that action with a threat does not create a cause of action under the First Amendment for

retaliation. Walton's claim of retaliation against Defendant Fitz also fails for the same reasons. Walton alleges Defendant Fitz ordered an attack on Walton because Walton spit on a guard. Spitting on prions officials is not protected conduct, and acting in response to that action does not constitute a First Amendment claim.

Walton does, however, sufficiently state an Eighth Amendment claim against Defendant Fitz. Walton alleges Fitz ordered prison guards to assault Walton in a side room of a pod on two occasions, during one of which Walton was handcuffed and had his hands behind his back. (ECF No. 1-4 at PageID 44.) Being beaten by a prison guard without cause, as Walton alleges, is sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Walton's allegation that Fitz himself ordered the attack also satisfies the subjective component. Directing an assault on an inmate would show much more than knowledge of, and indifference towards, a risk of harm to an inmate; it would constitute a specific intent to bring about that harm. Walton's allegations, taken as true, state an Eighth Amendment claim against Defendant Fitz.

Walton does not allege that any specific actions by Defendants Lebo and Tony Parker deprived him of a constitutional right. He instead seeks to hold these Defendants responsible for the actions of the other Defendants in their roles as Warden and Commissioner. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Lacking any allegations of personal involvement, the claims against Defendants Lebo and Tony Parker fail to state a cause of action.

Walton alleges in a conclusory manner that certain Defendants, sometimes named other times not, conspired against him. (ECF No. 1-4 at PageID 54.) Claims of conspiracy under § 1983 "must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Walton's allegations entirely fail to meet this heightened pleading standard. He therefore fails to state a claim for conspiracy.

Walton does not state a claim under the Double Jeopardy Clause by alleging he was twice disciplined for the same incident. (ECF No. 1-4 at PageID 52.) The Double Jeopardy Clause applies only to judicial proceedings, not to administrative proceedings

13

such as prison disciplinary charges. *See Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983); *Sand v. Bogan*, No. 93-2280, 1994 WL 112862, at *2 (6th Cir. Mar. 31, 1994).

To the extent Walton seeks to sue on behalf of other inmates at WTSP about the grievance system generally, he lacks standing to assert claims on behalf of any inmate other than himself. One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless Plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001). There are no factual allegations in the complaint setting out how Walton was personally affected or harmed by the grievance policies and practices of which he complains.

To the extent Walton seeks injunctive relief transferring him to another facility, that request is moot because he is no longer at WTSP. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility).

In conclusion, the Court DISMISSES Walton's claims against Defendants TDOC, Daniel, C/O Parker, Rose, Lebo, Tony Parker, Bartlett and Rogers for failure to state a claim on which relief can be granted and for seeking monetary relief against a Defendant immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b).

It is ORDERED that the Clerk shall issue process for Defendant Fitz, ATW Warden at the WTSP during February 2017, and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Fitz pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Walton shall serve a copy of every subsequent document he files in this case on the attorneys for Defendant Fitz or on Defendant Fitz if he is unrepresented. Walton shall make a certificate of service on every document he files. Walton shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]

Walton is reminded that he must promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD

---

[3] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

UNITED STATES DISTRICT JUDGE